UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF

WANDA H. SLATER,
B. BARTON SLATER, AS ASSIGNEES
AND REAL PARTIES IN INTEREST,
AND LCI EQUIPMENTS, INC., AS
ASSIGNOR AND NOMINAL PLAINTIFF                    PLAINTIFFS

V.                      5:09CV00269 JMM

REPUBLIC-VANGUARD INSURANCE COMPANY              DEFENDANT

## ORDER

Pending are cross-motions for summary judgment. The parties have filed responses and replies. The parties agree that there are no genuine issues of material fact remaining in the case. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

I.  Facts

On September 28, 2004, Rudy and Wanda Slater purchased a used Yanmar tractor from Chris Elder Enterprises. Rudy Slater was killed one week later when the tractor rolled over on him while mowing around his pond. The tractor was not equipped with a roll-over protection system ("ROPS").

The tractor was designed in 1973 and manufactured in 1977 by Yanmar for use in Japan. It was imported to the United States in January 2004 from Le Chau, or Lucky Company, Inc., in Vietnam to LCI Enterprises, Inc. ("LCI") in Texas. When LCI imported the tractor it had been refurbished and the odometer had been reset. The tractor was not checked for roll-over protection. LCI sold the tractor at an auction in Oklahoma to Chris Elder Enterprises.

Wanda Slater filed suit against LCI and other defendants for their part in the death of her

husband, Rudy. LCI had insurance coverage under a Commercial General Liability Insurance Policy (the "Policy") with Republic-Vanguard Insurance Company ("Republic-Vanguard") from October 7, 2003 to October 7, 2004. Republic-Vanguard was notified of the lawsuit against its insured. Scarlett Lieck, the third-party administrator for Republic-Vanguard, denied the claim explaining that she believed the lawsuit was a defective products claim and, therefore, fell within the Products-Competed Operations exclusion of the Policy. Finding no coverage, Republic-Vanguard refused to defend the suit.

At the conclusion of the trial in Mrs. Slater's case, the jury returned a verdict against LCI for supplying an unreasonably dangerous product and negligence in favor of Wanda Slater. The jury found LCI liable for $725,000.00 in damages to Mrs. Slater. LCI assigned its rights and interests under the Policy for the claim and judgment to Mrs. Slater. She filed suit in federal court against Republic-Vanguard seeking the Court's declaration of coverage under the Policy.

II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

    III.    Discussion of the Law

    A.    Choice of Laws

The federal court's interpretation of an insurance policy in a diversity case such as this is governed by state law. *National Union Fire Insurance Company of Pittsburg v. Terra Industries, Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003).  In a diversity case, the federal court applies the choice-of-law rules of the forum state. *U.S. Fire Insurance Company v. Kresser Motor Service, Inc.*, 26 F.3d 91, 94 (8th Cir. 1994).  In Arkansas, "[c]hoice-of-law questions regarding insurance coverage have traditionally been resolved by applying the law of the state where the insurance contract was made (the *lex loci contractus* rule)." *Southern Farm Bureau*

*Cas. Ins. Co. v. Craven,* 89 S.W.3d 369, 372 (Ark. App. 2002) (citing Robert A. Leflar, Luther McDougal, & Robert Felix, American Conflicts Law § 153 (4th ed.1986); Restatement (Second) Conflict of Laws § 193 (1971); *John Hancock Mut. Life Ins. Co. v. Ramey*, 140 S.W.2d 701 (Ark. 1940) (holding that the rights and liabilities of the parties to an insurance contract should be determined with regard to the law of the state where the contract was made)). Arkansas courts may also consider the significant contacts test in determining choice of law questions. "The contacts to be taken into account include (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Craven*, 89 S.W.3d at 372 (citing Restatement (Second) Conflict of Laws § 188 (1971)).

The Policy was executed in Texas. The insurer, Republic-Vanguard, is a Texas corporation and the insured, LCI Equipment, Inc., is a Texas corporation with its principal place of business in Texas. The Policy covers LCI's business operations located in Texas. Therefore, under either the *lex loci contractus* rule or the significant contacts test, Texas law must be applied to this case.

  B. <u>No Action Clause</u>

The Defendant contends that this declaratory judgment suit is barred by a "no action" clause contained in the Policy. This clause states:

> No person or organization has a right under this Coverage Part:
> a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
> b. To sue us on this Coverage Part unless all of its terms have been fully complied with.
> A person or organization may sue us to recover on an agreed settlement *or on a final*

> *judgment against an insured obtained after an actual trial*; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or claimant's legal representative.

(Pls' Ex. C at p. 8)(emphasis added). The Defendant argues that Plaintiffs' sole basis for recovery in this action is based on the assignment of rights between LCI and the Slaters, not the verdict in the underlying state court action. The Court finds this argument to be without merit. The Amended Complaint specifically states that a final judgment was entered against LCI in favor of the Slaters. Plaintiffs seek a declaratory judgment "in their favor determining that that [sic] Republic-Vanguard Insurance is under a duty to provide a defense and coverage in [sic] pursuant to the subject policy in the amount of the judgment rendered against insured LCI Equipments, Inc." (Amended Complaint at p. 3). Therefore, the no action clause does not bar this suit.

      C.    <u>Products-Completed Operations Exclusion</u>

Defendant contends that LCI's Policy did not cover any of the claims made by the Slaters in the underlying state court suit because coverage was excluded under the Products-Completed Operations exclusion. Defendant cites *LaBatt Co. v. Hartford Lloyd's Ins. Co.,* 776 S.W.2d 795 (Tex. App. 1989) as authority for its contention that the Products-Completed Operations exclusion applies to the facts of this case. LaBatt Company manufactured, designed, marketed and distributed food products. Hartford insured LaBatt under a commercial multi-peril insurance policy. Similar to the Products-Completed Operations exclusion in the instant case, the policy did not extend to bodily injury claims or property damage included within the Completed Operations Hazard or the Products Hazard. *Id.* at 798. "Products hazard" was defined in the policy as:

> "Products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

*Id.*

LaBatt was sued under theories of strict products liability, negligent design, manufacture and marketing of its food products after the death of Susan Trapnell. The Trapnell plaintiffs alleged that LaBatt marketed and designed food that contained sulfites. The plaintiffs contended that the foods were defective and that the consumption of the foods could be harmful. Hartford moved for summary judgment on grounds that the Trapnell suit failed to allege a cause of action under the commercial multi-peril policy. Hartford alleged that the policy expressly excluded coverage for bodily injury arising out of LaBatt's products, representations or warranties where the bodily injury occurred away from LaBatt's premises, and where the bodily injury had occurred after physical possession of the food products had been relinquished to others. LaBatt contended that the Trapnell suit alleged negligence claims which were not excluded by the products hazard exclusion.

The Court of Appeals held that the Trapnell causes of action clearly fell within the 'products hazard' exclusion. "The bodily injury alleged in the Trapnell suit arose from the LaBatt Companies' products. Furthermore, the bodily injury occurred away from the premises owned by or rented to the LaBatt Companies. The bodily injury also occurred after physical possession of the LaBatt Companies' products had been relinquished to others." *Id.* at 799.

The Court of Appeals considered LaBatt's argument that the negligence claims were separate from the products liability claims and thus were not excluded from coverage.

6

> The Trapnell suit is grounded on a defect in products sold *not* a negligent omission unrelated to any product defect. . . ."[W]e have allegations of a defective product. The fact that the Trapnell plaintiffs have alleged negligence in their petition does not mean that a claim based in products liability becomes one based in negligence. 'Products liability' is a generic phrase used to describe the liability of a manufacturer or supplier to a person injured by a product. One of the appropriate methods to use, in Texas, when asserting a claim based upon an injury suffered from a defective product is negligence.

*Id.* at 799-800.

The Products-Completed Operations exclusion in the instant case is almost identical to the exclusion in the LaBatt case. The Policy states:

> It is agreed that under the provisions of this contract no coverage is provided, nor is there any duty to defend, claims, suits, actions or proceedings against the insured arising out of "products" or "completed operations" . . . .

(Def's Ex. C at p. 28).

> "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
> (1)    Products that are still in your physical possession; or
> (2)    Work that has not yet been completed or abandoned.
>
> "Your work" will be deemed completed at the earliest of the following times:
> (1)    When all of the work called for in your contract has been completed.
> (2)    When all of the work to be done at the site has been completed if your contract calls for work at more than one job site.
> (3)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
>
> "Your product" means:
> a.     Any goods or products, other than real property, manufactured, sold, handled, or distributed or disposed of by:
>        (1)    You;
>        (2)    Others trading under your name; or
>        (3)    A person or organization whose business or assets you have acquired; . . .
>
> "Your product" includes:

      a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      b.      The providing of or failure to provide warnings or instructions.

(Def's Ex. C at p. 11).

It is undisputed that the Yanmar tractor in question had left the possession of LCI at the time of Mr. Slater's accident and death. Further, the tractor roll-over which caused Mr. Slater's death occurred did not occur on the LCI premises, but on the Slaters' property. Therefore, the Court finds that the Slaters' causes of action against LCI clearly fall within the Products-Completed Operations exclusion.

The Slaters claims for negligence against LCI, including failure to warn and breach of warranties or representations are also excluded in the Policy. Although Plaintiffs argue that LCI's negligence occurred on LCI premises when LCI failed to install an ROPS on the tractor, when LCI failed to provide warnings about the lack of ROPS on the tractor and failed to inform the buyer of the age of the tractor, "the relevant inquiry is whether the bodily injury, not the alleged tortious conduct, occurred on the insured premises." *LaBatt*, 776 S.W.2d at 799. It is undisputed that Mr. Slater's bodily injury occurred away from LCI's premises.

Plaintiffs also argue that the Yanmar tractor was not "completed" when sold because LCI failed to install an ROPS as required under laws of the United States. If the tractor is not completed, it is not excluded by the Products-Completed Operations exclusion. In *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848 (Tex. App. 1987), the court found that the "completed operations" exclusion found in the multi-peril comprehensive general liability insurance policy did "not apply in cases in which the damage or injury arises in connection with the sale or distribution of a product by an insured." *Id.* at 851 (citing *Cooling v. United States Fidelity &*

*Guaranty Co.*, 269 So.2d 294, 297, (La. App. 1972), *cert. den*. 272 So.2d 373 (La. 1973);

*American Trailer Service, Inc. v. Home Insurance Co.*, 361 N.W.2d 918, 920 (Minn. App. 1985);

*ADA Resources, Inc. v. Don Chamblin & Associates, Inc.*, 361 So.2d 1339, 1343 (La. App.1978); and *General Insurance Co. of America v. Crawford*, 635 S.W.2d 98, 101 (Tenn.1982). The court stated:

> It [completed operations exclusion] appears to be designed primarily for businesses that perform services or maintenance, such as contractors or subcontractors, particularly in its reference to a "portion of the work out of which the injury or damage arises" which "has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project."

*Id.* at 851 (quoting *General Ins. Co. v. Crawford*, 635 S.W.2d 99, 102 (Tenn. 1982)). Although the facts in *Colony* are distinguishable from the facts of the instant case, the court's reasoning as to the applicability of the completed operations to services is persuasive.

Further, the Policy at issue specifically states: "Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." (Def's Ex. C at p. 11). While the argument exists that the Yanmar tractor needed "correction" because it did not have an ROPS, the tractor is still deemed a completed operation pursuant to the language of the Policy.

Plaintiffs also argue that the Products-Completed Operations exclusion is against public policy. Plaintiffs, however, fail to cite the Court to any supporting authority. Thus, the Court finds this argument to be without merit. The Court further notes that Products-Completed Operations exclusions are standard exclusions which have been included in multi-peril commercial insurance policies for many years. Coverage is available under separate policies for the type of risk excluded by the Products-Completed Operations exclusion.

D.  Duty to Defend

"Texas law is well established that the allegations contained in the plaintiff's petition determine an insurer's duty to defend the suit." *Id.* (citing *Fidelity & Guaranty Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 182); *Hayden Newport Chemical Corp. v. Southern General Ins. Co.*, 387 S.W.2d 22, 24-25 (Tex. 1965)). Because the Court has found that the Slaters' causes of action against LCI are excluded from the Policy, Defendant Republic had no duty to defend the underlying lawsuit.

IV.  Conclusion

Plaintiffs' Motion for Summary Judgment (Docket # 11) is DENIED and Defendant's Motion for Summary Judgment (Docket # 12) is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED this 7th day of July, 2010.

_____
James M. Moody
United States District Judge